Date signed August 26, 2015



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

In re:     *

MARQUIS McCRIMMON,     *     Case No. 13-31216-DER

Debtor.     *     Chapter 7

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>MEMORANDUM OPINION</u>**

Dane Equities, LLC ("Dane") filed a Motion to Reopen Chapter 7 Case on February 13, 2015 [Docket No. 43] (the "Motion to Reopen"). The Motion to Reopen was opposed by FCI Lender Services, Inc. ("FCI"), as servicer for Vonderharr Wagner Associates LLC Defined Benefit Pension Plan ("Vonderharr"). FCI asserts that Vonderharr is the holder of a note secured by a deed of trust on real property known as 1507 Ramsay Street, Baltimore, Maryland 21223 (the "Property"),[1] which at the time this case was commenced was owned by the debtor, Marquis McCrimmon (the "Debtor").

After a hearing held on April 13, 2015, the court granted the Motion to Reopen so the court could resolve a dispute between Dane and FCI about the effect of Dane's foreclosure of the Debtor's equity of redemption in the Property pursuant to a tax sale certificate while this case was pending. In accordance with the court's order reopening this case, the United States trustee

---

[1] The Property is subject to a ground rent. Thus, the interest in question here is actually a leasehold interest. For ease of reference and because it has no bearing on the issues before this court, I ignore this legal distinction when making further reference in this opinion to title to the Property.

reappointed Richard M. Kremen on April 14, 2015 to serve as trustee for the Debtor's bankruptcy estate (the "Chapter 7 Trustee").

After the Motion to Reopen was filed by Dane, FCI filed a Motion for Declaratory Judgment to Void a Tax Sale Foreclosure (the "Motion to Void Tax Sale") [Docket No. 45], which Dane opposed [See Docket No. 52]. After this case was reopened, Dane filed (as contemplated by its Motion to Reopen) a Motion for Relief from Automatic Stay to Validate Tax Sale Foreclosure [Docket No. 55] (the "Motion to Annul Stay"), which FCI opposed [See Docket No. 59]. Dane asks the court to annul the automatic stay and thereby validate its state court tax sale certificate foreclosure. Neither the Chapter 7 Trustee nor the Debtor filed an opposition to either the Motion to Void Tax Sale or the Motion to Annul Stay.

An evidentiary hearing on the Motion to Void Tax Sale and the Motion to Annul Stay was held on May 13, 2015. The only witness called to testify at that hearing was Aaron A. Naiman. As Dane's manager and attorney, Mr. Naiman was the person primarily responsible for enforcement of its tax sale certificate rights against the Property. In addition to Mr. Naiman's testimony, the court admitted into evidence a number of documents offered by Dane and FCI. Although FCI was represented by counsel, no representative of FCI testified or appeared at the hearing. Neither the Chapter 7 Trustee nor the Debtor appeared at the hearing.

At the conclusion of the hearing, the court requested the parties to submit post-trial memoranda. Dane filed its Memorandum on June 12, 2015 [Docket No. 62]. FCI's reply memorandum was due by July 11, 2015, but it has yet to file one.

For the reasons that follow, I conclude based upon a preponderance of the evidence that (i) the Motion to Annul Stay should be granted and that the automatic stay under 11 U.S.C. § 362

should be annulled effective as of the time this case was filed on December 19, 2013, and (ii) the Motion to Void Tax Sale should be denied as moot.

## JURISDICTION

This court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Rule 402 of the Local Rules of the United States District Court for the District of Maryland. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(G). This memorandum opinion constitutes the court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure (made applicable here by Rules 4001(a), 7052 and 9014 of the Federal Rules of Bankruptcy Procedure).

## FINDINGS OF FACT

The Director of Finance for the City of Baltimore held a public auction tax sale on May 20, 2013 of the Property (which was then owned by the Debtor) for nonpayment of taxes and other municipal liens. Dane purchased the Property at the auction for $5,300.00 subject to the Debtor's right of redemption and was issued a Certificate of Tax Sale for the Property dated May 20, 2013 by the Director of Finance [Dane Exhibit 1] (the "Certificate of Tax Sale"). Dane paid $2,831.41 (the total amount of taxes and municipal liens on the Property) to obtain the Certificate of Tax Sale, on which amount interest accrued under Maryland law at the rate of 18% per annum. In accordance with Maryland law an action to foreclose the right of redemption on the Certificate of Tax Sale could not be filed until six months had passed (that is, until November 20, 2013) and the "Certificate [would] be void unless such proceeding [was] brought within two (2) years from the date of [the] Certificate" – that is, by May 20, 2015.[2]

---

[2] See Md. Code Ann., Tax-Prop. § 14-833(a) ("at any time after 6 months from the date of sale a holder of any certificate of sale may file a complaint to foreclose all rights of redemption of the property to which the certificate relates"); Md. Code Ann., Tax-Prop. § 14-833(c)(1) ("The certificate is void unless a proceeding to foreclose the right of redemption is filed within 2 years of the date of the certificate of sale.").

Maryland law requires the holder of a certificate of tax sale to give certain notices to the property owner and lienholders beginning at least two months prior to filing an action to foreclose the right of redemption.[3]  Accordingly, Dane obtained a title abstract for the Property in or around September of 2013.  The abstract indicated that the Property was owned by the Debtor subject to a single deed of trust in favor of PNC Bank, N.A. ("PNC").[4]  Because this bankruptcy case was filed some three months later, the abstract did not indicate that the Debtor was involved in any pending bankruptcy proceedings.

Thereafter, Dane gave notice of its intended foreclosure to the Debtor and PNC.  Although the Debtor did not respond to that initial notice, PNC sent Dane a letter dated November 19, 2013 [Dane Exhibit 3] stating that PNC had assigned its rights in the deed of trust on the Property on November 14, 2012 to GMAC Mortgage LLC ("GMAC").  As a result, Dane then sent GMAC the required initial notice of its intended foreclosure.  The assignment to GMAC was not reflected in the title abstract obtained by Dane and as of the time of the hearing in this court, was not recorded in the Land Records of Baltimore City.

The Debtor filed a voluntary Chapter 7 bankruptcy petition in this court on December 19, 2013.  The Schedules of Assets and Liabilities filed by the Debtor with his petition [Docket No. 1, Pages 8 to 35 of 52] (the "Schedules") indicate that (i) he was the owner of the Property, (ii) the value of the Property was $43,393.00, and (iii) GMAC was the holder of a deed of trust

---

[3] Md. Code Ann., Tax-Prop. § 14-833(a-1) (the "holder of a certificate of sale may not file a complaint to foreclose the right of redemption until at least 2 months after sending the first notice and at least 30 days after sending the second notice required under this subsection").

[4] The parties agree the Property is subject to a deed of trust that is recorded in the Land Records of Baltimore City [FCI Exhibit C] and that it secures repayment of a loan made to the Debtor.  They do not agree, however, on whether Vonderharr is the current holder of the note secured by that deed of trust and whether FCI as its servicer thus has standing to oppose the Motion to Annul Stay or to file the Motion to Void Tax Sale.  For the reasons to be explained, I do not believe this court must decide the issue of FCI's standing in order to decide the issues presented.

on the Property securing repayment of a debt in the amount of $100,749.00.[5]  The Statement of Intention filed by the Debtor indicated that he did not claim the Property as exempt and that he would surrender the Property to GMAC [Docket No. 4, Page 3 of 6].  The Debtor did not mention the tax sale of the Property or list Dane as a creditor in either his Schedules or his Statement of Financial Affairs.  As a result, Dane was not sent and did not receive any notice of the Debtor's bankruptcy case while it was pending.

The Chapter 7 Trustee conducted the meeting of creditors pursuant to 11 U.S.C. § 341 and on February 28, 2014 issued a Report of No Distribution indicating that he had investigated the Debtor's financial affairs and concluded that there were no assets to be administrated for the benefit of creditors.  The Debtor was granted a discharge on June 3, 2014, and the court ultimately issued a final decree and closed this case on July 28, 2014.

While these events were taking place in this court without Dane's knowledge, Dane filed an action in the Circuit Court for Baltimore City, Maryland (the "Circuit Court") on January 24, 2014 to foreclose the equity of redemption under its tax sale certificate that was docketed as *Dane Equities, LLC v. Marquis McCrimmon, et al.*, Case No. 24-C-14-000485 (the "Tax Sale Foreclosure").  Dane served the Tax Sale Foreclosure complaint, summons, and related papers on, among others, PNC and GMAC on March 4, 2014, and the Debtor on April 8, 2014 [Dane Exhibit 4].  No opposition to the Tax Sale Foreclosure was ever filed.  As a result, the Circuit Court entered a Judgment Foreclosing Right of Redemption on June 18, 2014 that foreclosed the right of redemption, vested title to the Property in Dane, and directed the Director of Finance to

---

[5] The Property was not the Debtor's residence and appears to have been an investment property. The Debtor's petition stated that his address was 115 N. Curley Street, Baltimore, Maryland 21224 (the "Curley Street Property"). In addition to the Property and the Curley Street Property, the Debtor's Schedules and Amended Schedules [Docket No. 28] indicated that he owned four other properties in Baltimore City.  With the exception of the Curley Street Property, the Schedules as amended indicated that each of the properties owned by the Debtor was subject to a mortgage debt that exceeded the value of the property.

make and deliver a deed to the Property to Dane [Dane Exhibit 5] (the "Judgment"). In accordance with the Judgment, the Director of Finance executed a Deed dated July 16, 2014 that granted title to the Property to Dane, which was recorded in the Land Records of Baltimore City [Dane Exhibit 6].

After it acquired title to the Property, Dane decided to retain the Property for purposes of leasing it to a tenant. At that time, the Property was vacant and it had no water or electrical service. In addition, the Property sustained water damage due to roof leaks. As a result, Dane spent a considerable amount of its own funds to rehabilitate the Property. In addition, Mr. Naiman and other representatives of Dane expended substantial time at the Property dealing with or supervising improvements to the Property. Dane incurred and paid at least $30,569.49 to obtain and improve the Property, including $14,786.75 in costs to rehabilitate the Property after it acquired title, $3,136.15 in real property taxes for subsequent years, $1,226.15 in water bills, $3,458.15 in legal fees and expenses, $2,659.29 in miscellaneous expenses, plus the $5,303.00 purchase price [Dane Exhibit 7].[6]

I find that Dane acted without knowledge or notice of this bankruptcy case and took action in good faith to enforce its rights under the Certificate of Tax Sale from the time of the tax sale auction through December 11, 2014 when it learned of the filing of this bankruptcy case from FCI's counsel. On the other hand, FCI and/or its predecessors in interest PNC and GMAC knew of this bankruptcy case and knew that Dane had commenced the Tax Sale Foreclosure. They were in a position to warn Dane of the bankruptcy and the resulting automatic stay under

---

[6] Dane presented evidence at trial that it has incurred and paid a total of $33,400.90 to obtain and improve the Property. I find that the actual amount was $30,549.49 because Dane's calculation included both the $2,831.41 lien amount and the whole $5,303.00 purchase price (which already included the $2,831.41 lien amount). Because Dane thus double counted the $2,831.41 lien amount, I deducted that amount from $33,400.90 to arrive at the actual amount of $30,549.49. This amount does not include any compensation for the time spent by Mr. Naiman or other representatives of Dane supervising improvements to the Property. It also does not take into account (i) any increase in the value of the Property by reason of those improvements, or (ii) any interest accruing on amounts paid by Dane.

11 U.S.C. § 362. FCI did not do so until well after the Tax Sale Foreclosure was completed, the bankruptcy case was closed, title to the Property was transferred to Dane, and Dane incurred and paid at least $30,549.49 to obtain and improve the Property.

Dane learned for the first time on December 11, 2014 that the debtor filed this bankruptcy case when Mr. Naiman was contacted by FCI's counsel demanding that the Judgment be vacated [Dane Exhibit 8]. Dane refused to vacate the Judgment, and this litigation ensued. I do not find credible FCI's argument (unsupported by any evidence) that it delayed telling Dane about this bankruptcy case because the filing of a suggestion of bankruptcy in the Circuit Court would have entered the appearance of its counsel and might have subjected FCI to various procedural burdens. There is no reasonable explanation for why FCI and/or its predecessors in interest PNC and GMAC could not have immediately contacted Dane by letter or email (as FCI ultimately did on December 11, 2014) and advised Dane that it was acting in violation of the automatic stay. If they had done so as soon as they learned of the Tax Sale Foreclosure, FCI and Vonderharr could have avoided the consequences of this litigation.

The assignment by PNC to GMAC of the deed of trust on the Property was not recorded in the Land Records of Baltimore City. Likewise, nothing is recorded in the Land Records that evidences a further assignment of the note or the deed of trust on the Property to Vonderharr. Indeed, the only evidence of any interest of Vonderharr or FCI in the note and deed of trust presented to this court was an unrecorded purported assignment effective as of June 18, 2013 by Granite Loan Acquisition Venture IX LLC ("Granite") of the deed of trust on the Property to Vonderharr [Dane Exhibit 2].[7] FCI urges the Court to also consider as evidence of standing that

---

[7] This assignment is of little or no evidentiary value to FCI. There is nothing in the record that establishes Granite was ever a holder of the note with any right to enforce the deed of trust on the Property. Moreover, the assignment purports to assign an interest in the deed of trust, not the note; it is a well-known principle of Maryland law that the right to enforce a deed of trust follows the note and thus this assignment would do little to establish that Vonderharr

(i) FCI moved on Vonderharr's behalf in the Circuit Court to vacate the Judgment, and (ii) FCI commenced a foreclosure proceeding in the Circuit Court against the Property on behalf of Vonderharr, alleging that Vonderharr is the holder of the note secured by a deed of trust on the Property. Mere allegations in the Circuit Court and in a pleading filed in this court are not a basis upon which this court should make a finding that Vonderharr is in fact the holder of the note secured by the deed of trust on the Property, and I decline to do so here.

### CONCLUSIONS OF LAW

This court need not decide whether FCI has standing to oppose the Motion to Annul Stay and to prosecute its Motion to Void Tax Sale. The standing issue, like the Motion to Void Tax Sale, is moot because the court must grant the Motion to Annul Stay on its merits.

As this court has observed, "[i]t is well established in this District that a foreclosure sale conducted in violation of the automatic stay of [11 U.S.C. § 362] is void." *In re King*, 362 B.R. 226, 233 (Bankr. D. Md. 2007) (citing *In re Brown,* 342 B.R. 248, 255 (Bankr. D. Md. 2006) and *In re Lampkin,* 116 B.R. 450, 453 (Bankr. D. Md. 1990)). As the Fourth Circuit has also said, "[a] chief purpose of the automatic stay is to allow for a systematic, equitable liquidation proceeding by avoiding a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846, 864 (4th Cir. 2001) (internal quotations omitted). Nevertheless, a court may validate an unknowing violation of the automatic stay by annulment of the stay. *Lampkin*, 116 B.R. at 453. Annulment of the stay validates otherwise void acts because "[t]he effect of annulling the stay is to negate its existence in its entirety." *Id*. (citations omitted).

---

is the holder of the note. "The deed of trust cannot be transferred like a mortgage; rather, the corresponding note may be transferred, and carries with it the security provided by the deed of trust." *Anderson v. Burson*, 424 Md. 232, 246 (2011) (citing *Le Brun v. Prosise*, 197 Md. 466, 474-75 (1951)). Vonderharr could have addressed this issue by simply appearing in court with a witness in possession of the note. For reasons not apparent from the record, it chose not to do so.

The notion that the automatic stay may be annulled to validate otherwise void acts is contemplated by the express provisions of § 362 of the Bankruptcy Code.[8]  Courts generally hold that this includes the power to grant relief retroactively to validate actions taken in violation of the automatic stay.  *See*, *e.g., In re Myers*, 491 F.3d 120, 127 (3d Cir. 2007) ("this Court and others have held that actions in violation of the stay, although void (as opposed to voidable), may be revitalized in appropriate circumstances by retroactive annulment of the stay"); *In re Siciliano*, 13 F.3d 748, 751 (3d Cir. 1994) ("inclusion of the word "annulling" in the statute indicates a legislative intent, to apply certain types of relief retroactively and validate proceedings that would otherwise be void *ab initio*"); *Easley v. Pettibone Michigan Corp.,* 990 F.2d 905, 909-10 (6th Cir. 1993); *Sikes v. Global Marine, Inc.,* 881 F.2d 176, 178-79 (5th Cir. 1989); *Albany Partners v. Westbrook (In re Albany Partners),* 749 F.2d 670, 675 (11th Cir. 1984) ("§ 362(d) permits bankruptcy courts, in appropriately *limited* circumstances, to grant retroactive relief from the automatic stay").  While annulment of the automatic stay should not be granted lightly due to the importance of the automatic stay, "bankruptcy courts have wide discretion in weighing the factors and determining what constitutes cause to annul the stay." *Shaw v. Ehrlich*, 294 B.R. 260, 272 (W.D. Va. 2003) (affirmed by *Wiencko v. Ehrlich (In re Wiencko)*, 2004 U.S. App. LEXIS 10174, 2004 WL 1146490, 99 Fed. Appx. 466 (4th Cir. Va., May 24, 2004)).[9]

In considering whether to annul the automatic stay and grant retroactive validation to actions taken in violation of the stay under § 362(d)(1) of the Bankruptcy Code, courts consider a

---

[8] "The court shall grant relief from the stay … such as by terminating, **annulling**, modifying, or conditioning" the automatic stay.  11 U.S.C. § 362(d) (emphasis added).
[9] In its decision in *Wiencko*, the Fourth Circuit stated that under 11 U.S.C. § 362(d), "bankruptcy courts have the discretion to annul the automatic stay retroactively for cause in order to rehabilitate stay violations."  99 Fed.Appx. at 468 (citing *Mataya v. Kissinger (In re Kissinger)*, 72 F3d 107, 108-09 (9th Cir. 1995)).

variety of factors in addition to the factors for lifting the stay generally.[10] *See, e.g., In re Fjeldsted*, 293 B.R. 12, 24-25 (B.A.P. 9th Cir. 2003) (listing factors); *In re Coletta*, 380 B.R. 140, 147-48 (Bankr. E.D. Pa. 2007) (listing additional factors). The factors "are merely a framework for analysis and not a scorecard. In any given case, one factor may so outweigh the others as to be dispositive." *In re Fjeldsted*, 293 B.R. at 25. Having carefully considered these factors, I conclude that the circumstances of this case weigh in favor of annulling the automatic stay.

In this instance, Dane acted in good faith and without knowledge of the filing of the Debtor's bankruptcy case. In addition, if Dane had filed a motion for relief from the automatic stay before commencing the Tax Sale Foreclosure, the motion would undoubtedly have been granted and the stay would have been terminated to permit Dane to proceed with its foreclosure. There was no equity in the Property, it was not necessary for an effective reorganization because the Debtor was in a Chapter 7 case, the Property was vacant, and the Debtor's stated intent at the outset of the case was to surrender the Property. The Chapter 7 Trustee filed a Report of No Distribution confirming that he concluded that the Property was of no benefit to the bankruptcy estate.

On the other hand, FCI and/or its predecessors in interest PNC and GMAC knew of the filing of both this bankruptcy case and the Tax Sale Foreclosure, but took no action to advise

---

[10] In addition to the two main factors courts rely on when deciding whether to annul the stay, whether the creditor was aware of the bankruptcy petition and whether the debtor engaged in inequitable conduct or there would be prejudice to the creditor, the *Fjeldsted* court listed numerous other factors that courts can consider when deciding whether to annul the stay. These include weighing the prejudice to creditors or third parties such as a bona fide purchaser, whether creditors took action knowing of the stay, whether the parties can be restored to their position prior to the violation, the costs of annulment, how quickly the debtors moved to void the sale stay violation, whether annulment will cause irreparable injury to the debtor, and whether annulment will promote judicial economy. *In re Fjeldsted,* 293 B.R. at 25. The court in *Coletta* additionally looked to whether "the additional expenses necessarily incurred by the creditor who must begin anew with its enforcement remedy outweigh the benefit to anyone; and whether a motion for relief from stay would likely have been granted before the creditor acted in violation of the stay, had it been filed." *In re Coletta,* 380 B.R. at 148. *See also*, *In re Killmer*, 513 B.R. 41 (Bankr. S.D.N.Y. 2014) (discussing the *Fjeldstad* factors as well as other factors adopted in *In re Worldcom, Inc.*, 325 B.R. 511 (Bankr. S.D.N.Y. 2005)).

Dane or the Circuit Court that Dane was acting in violation of the automatic stay.  Consequently, Dane changed its position to its detriment.  It incurred at least $30,569.49 to complete the Tax Sale Foreclosure, acquire title, rehabilitate, and improve the Property in anticipation of renting it to a tenant.  Moreover, in order for Dane to be made whole at this point it would need to be compensated for the time and effort of its representatives in supervising the rehabilitation of the Property and presumably paid 18% interest on at least some portion, if not all, of its loss.

At this point it is not possible to restore the parties to the status quo that existed at the time of commencement of the Tax Sale Foreclosure.  It has long been the law in Maryland that if the holder of a tax sale certificate does not exercise its right to foreclose the right of redemption within the applicable time limit, "such certificate becomes void and of no effect."  *Bullard v. Hardesty*, 217 Md. 489, 496 (1958).  The two-year period within which Dane could exercise its rights expired on May 20, 2015.  If the Deed to the Property, the Judgment, and the Tax Sale Foreclosure are void and not retroactively validated by annulment of the stay, Dane would find itself holding a stale and thus void tax sale certificate, with no right to now recommence an action to foreclose the right of redemption.[11]

Unlike the certain loss to Dane if this court denies the request to annul the automatic stay, the financial consequences to Vonderharr are uncertain.  At the hearing, FCI's counsel argued that FCI and Vonderharr face irreparable injury because Vonderharr will lose its right to foreclose against the Property.  Assuming Vonderharr had such a right, the only evidence in the record suggests Vonderharr would likely recover little if anything from foreclosure against the Property.  The Debtor listed the value of the Property in his Schedules as $43,393.00.  No other

---

[11] See Md. Code Ann., Tax-Prop. § 14-833(d) ("If a certificate is void under [§ 14-833(c)], then any right, title, and interest of the holder of the certificate of sale, in the property sold shall cease and all money received by the collector on account of the sale shall be deemed forfeited, and shall be applied by the collector on taxes in arrears on the property.").

evidence of value was introduced at trial. Assuming Dane has a lien against the Property for all of its costs and expenses as FCI's counsel suggested (a doubtful proposition),[12] a foreclosure sale of the Property is not likely to result in any meaningful financial benefit to Vonderharr. In the unlikely event the Property sold for $43,393.00 as the Debtor believed it to be worth, Vonderharr would not only have to make Dane whole, but would also have to pay its own costs of foreclosure, transfer and closing costs, and its legal fees before netting any amount that could be applied to the mortgage debt. Any such recovery by Vonderharr would be minimal when compared to the loss imposed on Dane in the circumstances of this case.

After consideration of all of the above, I conclude that the circumstances weigh in favor of Dane. This case presents the sort of unusual and compelling circumstance in which it is appropriate to grant retroactive relief to validate action that might otherwise be void by reason of violation of the automatic stay. Thus, I find that there is cause to annul the automatic stay pursuant to 11 U.S.C. § 362(d) as requested by Dane.

## **CONCLUSION**

For the above reasons, an order will be entered consistent with this opinion that (i) grants the Motion to Annul Stay and annuls the automatic stay under 11 U.S.C. § 362 as to the Property and the Tax Sale Foreclosure effective as of the time this case was filed on December 19, 2013, and (ii) denies the Motion to Void Tax Sale as moot.

---

[12] The issue of the extent to which Dane would be protected and made whole under state law was one of the issues that the court specifically requested the parties to address in their post-trial memoranda. As explained by Dane in its post-trial memorandum, while Maryland law provides some protection to the holders of tax sale certificates when a foreclosure judgment is reopened and set aside, it is not clear that those limited protections would apply to the circumstances in which Dane finds itself. Md. Code Ann., Tax-Prop. § 14-845. The statute speaks to judgments set aside by reason of "lack of jurisdiction or fraud"; FCI seeks, however, a declaration that Dane's foreclosure judgment is void *ab initio* by reason of violation of 11 U.S.C. § 362. FCI did not file a reply memorandum addressing the concerns raised by Dane in its post-trial memorandum. The court's own research has not uncovered any authority that would address those concerns or give the court any assurance that Dane would be fully compensated and made whole under Maryland law in the event this court determines that Dane's foreclosure judgment is void *ab initio*.

cc:   James C. Olson, Esq.
      10451 Mill Run Circle, Suite 400
      Owings Mills, MD 21117
      *Attorney for Dane Equities, LLC*

      Rita Ting-Hopper, Esq.
      Atlantic Law Group, LLC
      1602 Village Market Blvd., SE, Suite 310
      Leesburg, VA 20175
      *Attorney for FCI Lender Services, Inc., as servicer for*
      *Vonderharr Wagner Associates LLC Defined Benefit Pension Plan*

      Richard M. Kremen, Esq.
      DLA Piper LLP (US)
      6225 Smith Avenue
      Baltimore, MD 21209-3600
      *Chapter 7 Trustee*

      Christopher Robert Doyle, Esq.
      7207 Hanover Parkway, Suites C and D
      Greenbelt, MD 20770
      *Attorney for the debtor, Marquis McCrimmon*


**-- End of Memorandum Opinion --**